May it please the Court, Counsel, I'm Megan Flynn representing the estate of Ray O'Neil. The language of the Longshore Act, Section 8I, is clear. If the parties... Excuse me, that's not coming up loud. I think that's a recording device, so you might... Pull that microphone just a little bit closer to you, if that works. All right? Under Section 8I of the Longshore Act, if the parties agree to settle, the settlement shall be approved. The agreement shall be approved unless it was inadequate or procured by duress. Here the parties agreed to settle the claim, not only in general, but agreed to every material term, reduced all those terms to writing, and there's no indication of duress or that the settlement's inadequate. What is the evidence, if we take the Fifth Circuit case as sort of a baseline, what is the evidence, because in that case, as I recall, there was no agreed writing in existence. There was this oral settlement, as I understand it, but they hadn't reduced it, they emphasized it hadn't been reduced to writing, and therefore clearly no application of the clause. As I understand here, was there a unified document that had been reduced to writing? There was a unified document that had been reduced to writing. It had gone back and forth between the attorneys for the parties. And what about the participation of Mr. O'Neill? He agreed completely, or the evidence through his attorney. What's the evidence of his agreement? Because the other thing the Fifth Circuit pointed out was the purpose of the application is to pull together, all in one place, and they may have been reading this into the regulations, but in any event, that's what they said, that it pulls it all together in one place so that the claimant who's giving up his benefits or whatever, settling out his benefits, sees it all in one place. Now, what's the evidence in this case that Mr. O'Neill really, aside from his attorney, knew what was going on and orally assented to it? Well, the evidence is the affidavit of his attorney. Mr. O'Neill is dead. I understand that. And I think at this point, if there was some factual question, that could be a question that would need to be decided back at the hearing level. How would you get around the regulation? This is the one that I'm struggling with. It says the application has to be in the form of a stipulation signed by all parties. And if Edward O'Neill is not a party, how do you meet the requirements of that regulation? You don't meet the letter of those requirements without a signature of the parties, however that term is defined. The regulation does not define the parties. We go through some general principles about, you know, a person representative of an estate being able to substitute in this party, but the thing about the regulation is it makes perfect sense that a signature is one way to manifest assent. In reviewing the proposals, the director's role is to make sure that the claimant has assented. That's the easiest way to do it. The statute doesn't set out anything that could- Maybe I should be more precise. What authority do we have to adopt the spirit but not the letter of the regulation? I don't think you even need to go that far, because it's not just the director that has authority to approve settlements. Through the ALJ process, settlements can be approved as well. For the director's purposes, they want everything spelled out in a certain manner. But there's nothing in the regulation, or certainly not in the statute either, that says if the claimant can't sign his name on this completed agreement- There would be another question if he had some kind of physical inability to sign, and you would say that, for example, using his power of attorney, that the attorney signed for him with him present, and that would be tantamount to signing. But what you're asking us to do is say that his oral assent coming through his attorney is tantamount to signing. Is that correct? Through his personal representative. And I think it is an important point that this death situation is not the only situation in which the board's ruling is going to affect. There are other situations in which the parties could have agreed entirely to a settlement, an offer, an acceptance, agreement on all terms, and for some reason the claimant can't sign. Or the other problem is that the rule sets up that up to the time the claimant puts his name on the application, there's no binding agreement. And that opens up an entire window of uncertainty. If the claimant were on appeal and a decision came down in that window, even after the employer and claimant had reached an agreement under this, if the claimant had not yet signed his name, the employer wouldn't be bound. If some other law came down that affected the claim, what the board has set up is that there is no binding agreement up until the claimant signs his name. And that goes far beyond a situation as this, which admittedly probably is not going to arise all that often, a death in the interim, although it's come up enough that there have been a few cases on it, obviously. But I think the only way to make sense of the regulation, assuming the signature form of signature is going to be interpreted as an absolute requirement as to both ALJ approval and director approval process, the regulation only speaks to party. And whether the party becomes the conservator for an incapacitated claimant, the person representative of the estate, our legal system is set up so that when you have agreements, when you have contracts, somebody steps into the shoes of the parties. Well, here's my troubles being about the structure of all this. The statute itself, Section 908, seems to contemplate, as it says, whenever the parties to a claim for compensation under this chapter, including survivor benefits, agree to a settlement, which seems to be the first step. Then the settlement, which presumably by the language of the statute has been agreed to, has to approve. The regulations seem to me set out a process for approval of the settlement. But the settlement has been achieved according to the structure, and indeed the regulation seems to contemplate the same. When the parties agree to a settlement, they shall submit a complete application for approval. And then this two-step process was being posed here, and that's why I averted to the Fifth Circuit opinion, that their concern was that this process that's been set up is to protect the claimant, presumably. And in this case, we have, if there is evidence that the claimant really did assent to it, and all that mechanically needed to be done was his signature, it troubles me that somehow the absence of his signature alone, when there's a, assume, I'm assuming here, a completed settlement, that he should therefore be, or his personal representative in his behalf, should be foreclosed from letting the administrative process proceed. And that is exactly how the Board ruled, is that the absence of the signature was binding. And there is language in, the Fifth Circuit sort of has bookend cases. They have Henry, which says there's nothing. They have the Nordahl case, which says that doesn't affect this. That's wild, but that addresses at least part of what you were concerned about by the Board rule. Once it's into the process, the fact that the claimant dies, once it's in the process, that doesn't kill the law, so to speak. Right. Do you want to reserve time? I would like to reserve the rest. Thank you. May it please the Court, J. Batey, appearing on behalf of Respondent Bunge Corporation. Claimant doesn't challenge the validity of the regulation. Could you speak up, please? Thank you. Claimant doesn't challenge the validity of the regulation or claim that it is not entitled to Chevron deference or that it's a legal ultravirus or is otherwise not binding on this law. So what's the deference here? It seems to me the question here is, this is what, at least for my purposes, I'd like to get a clearer view of this process. As I just pointed out, and maybe you disagree with it, but it seems to me that the statute and the implementing regulation, both as a precondition of triggering the approval process, require that the parties have reached a settlement. Now the question is, is getting it approved. It's like you get a class action settlement or whatever. It has to go to court for the approval. But that doesn't mean, as between the two parties, that there hasn't been a settlement. Let's suppose, for example, that there was a settlement in this case, and your employer, your client, changed its mind and said, we don't want to go forward with this, and we refuse to participate in whatever they might have to do with regard to the application process. Is it your contention that because the matter hasn't gone forward that the employer can back out? It all turns on whether he signed the application, in other words. Well, it's quite clear in a situation like that that the employer cannot back out. If both parties have signed the agreement. No, I'm saying, I'm sorry, I wasn't making my hypothetical clear. Let's assume that the agreement had been realized, okay, and as was the case. And then instead of, well, I guess this is what your employer did. He died. And they said, sorry, we don't want to go through. But let's suppose he hadn't died. There had been an agreement signed by your client, but he had to come back from his hunting trip and sign it. And instead the employer decides, having accepted the settlement, he having accepted the settlement, and now he had to come in and sign an application, your client wanted to back out. Should it be able to do so? Absent a signature by both parties, the district director and the ALJ absolutely lack the authority to approve the settlement. That's not answering my question. Should they be able to back out of the underlying settlement? There is no settlement as a matter of statute and regulation until it is signed. You can say that the parties reached an agreement, but according to the regulation and the statute, there really is no enforceable agreement until there is a signed writing. What's your authority for that? You're saying that the application is the settlement agreement? The application is supposed to be a self-contained document that is signed by the parties. Okay, let's suppose this. I want to make sure I understand where you're going with that. In the normal course, if you enter a settlement agreement, both parties sign it, okay, but it's not the application in this case. Both parties have a signed agreement, but the application hasn't been filled out nor signed by the claimant, and then he dies. Your argument is that too bad, no enforceable settlement? Well, that's a case very different from this one, but, yes, the result would be the same. The regulation is clear. There has to be a signed settlement application, and the reason for that is to protect the claimant. The settlement application has all the evidence necessary for the ALJ or the district director to approve or disapprove the settlement. It's assumed that all that information is presented to claimant, the claimant can look at it and finally express his assent based on the final written document. Even though he had already signed a document, a settlement agreement, my hypothetical, he already signed off on it. Has he signed twice? I would say that if that agreement that you hypothesize met all the requirements of the regulation in 8I, then it could be approved by the court. It doesn't have to be on a particular xeroxed form or in a fashion necessarily laid out as it is in the regulation. If all the information is there, they can approve it. The requirements, though, in effect require a signature to show assent. Well, what they're arguing is, and that makes sense to me because how do we know? A settlement in principle, as we all know, doesn't do anyone a lot of good until we know what the settlement is, which is why you would require a signature. But I understood that the argument here was that, in effect, the personal representative could provide the affirmation. Why isn't that possible? Well, for one thing, as the court questioned, was there any evidence of a completed agreement in this case? Before he died, did he say, yes, I accept that agreement? Well, there's no evidence of that. The final 8I settlement stipulation was never presented to Mr. O'Neill. He never read it, at least as far as one can tell from the affidavit submitted by his attorney, and he never signed it. So the signature requirement is the synchronon of an agreement. The ALJ and the deputy director, the district director, have to be assured that the claimant knows what he's settling. The claimant doesn't know what he's settling until he's presented with an 8I stipulation, reads it, and signs it. The reason for these regulations, and relating back to the Court's question about deference, these are implementing regulations. They were proposed in 85. They were submitted for notice and comment and were passed in 1986. They are law. They are binding on this Court under the Chevron analysis. They clearly require a signature for two reasons. One, it gives the ALJ a single piece of evidence to look at to determine whether or not there has been a settlement. Well, you just said, though, as long as he signs the settlement agreement, the underlying settlement agreement, that would serve as an application. Yes, if it otherwise met the requirements of the regulation. All right, now let's just say, is there any dispute that this doesn't? It's not signed. But that's the only thing that's missing, the signature. Everything else is there. Right. Now, if you get a, if there was absolute proof that Mr. O'Neill, before his death, this is, again, hypothetical, said, I can't sign it because I'm going off on this hunting trip. I've read it. I'm going to come in and sign in your office when I get back. It's all fine to me. And there are three witnesses to that conversation. Okay, so now everything that the regulations contemplate, having a single document that the Circuit worried about, that he's read, and that the Deputy Commissioner can now read, is all there. The only thing that's missing is the signature. Right. And our point of disagreement is that I view the regulations as requiring a signature to manifest assent. This is no different than a typical contract case where the parties agree that a signed writing is a conditioned precedent to a completed agreement. Wow. There is no completed settlement until there is a signature. And the reason for that is it protects claimants. They have to look at the document, and they have up until the time, actually, they have up until the time of approval to void the agreement. So it also improves administrative expediency. One of the purposes behind the regulation in the 1984 amendments to Section I was to make it easier for the ALJs to review and approve settlements. If an ALJ has to look into the intent of the parties and determine whether a claimant really intended to settle a case, then that's going to slow down the process. The regulations anticipate that this process will be sped up by having one single piece of assent evidence, and that is the signature of the claimant. And that's why it's a requirement under the regulation. And as I've said earlier, the regulations are binding. What is the evidence of Mr. O'Neill's assent here? I don't want to mischaracterize the affidavit of Mr. Wilson, who was his attorney, but as I recall the affidavit, it said, I talked to claimant, he said he'd come in after his hunting trip to sign the stipulation. There's no evidence in the affidavit, and I could let Ms. Flynn speak to this, there's no evidence indicating that he was ever given a copy of it, that he ever saw it. It was just, you know, Mr. O'Neill, come on in, you can sign this settlement agreement, and I assume that he would sit down, he would read it fully, and then he would sign if he believed that that's what he wanted to do at the time. Now, I don't want to digress, but let's say that he went on this hunting trip and came back after surviving a heart attack. The likelihood of him signing would have been reduced, because in that case he probably wouldn't have wanted to give up his future medical benefits. Let's say he came back from his hunting trip and felt particularly hale, and felt that he was going to live for another 10 years. He was 76 at the time. Maybe he would have felt that the amount of the settlement was too low at that point. There could have been any number of intervening factors that could have occurred between the time his attorney called him and told him to come down and the time he put his signature on that line. Assuming that that were the case, that he had signed a written settlement agreement, that there was mutual assent, and what you posited happened, would you be arguing from the other perspective now, you'd be saying the employer is entitled to the benefit because it was binding and should go through? That's where you get into the one-sidedness of the enforcement of these settlement agreements. The claimant can withdraw from the agreement at any time prior to approval. You can have a signed agreement. It could be into the ALJ or the deputy director, and the claimant could just say all bets are off. That's the one-sided nature of it. Once the employer signs, the employer is stuck. Once the claimant signs, the claimant has an election to either be stuck or not. In this case, we have no one signing, is that correct? No one signed. We have the agreement going back to the attorney saying, I made some changes, here it is, and that's where it stops. That's where it stops. Okay, thank you. Thank you. The evidence in the record of the claimant's agreement to the actual terms of the settlement is Paragraph 7 of the affidavit of his counsel, which is Exhibit 18 in the record. And it sets out – I'm sorry, Exhibit? 18. Is this Mr. Wilson? This is Mr. Wilson's affidavit. It sets out that the claimant agreed with all the terms, that when he got the revised settlement, they just went over the settlement over the phone and described that it met all the terms that the claimant had agreed he wanted. At a minimum, it raises a factual question. There certainly is evidence that the claimant did everything short of view the terms with his own eyes, which, again, he thinks sets up this requirement. Who's proper to resolve, assuming he got that far, that factual determination? The ALJ. So what would the deputy commissioner do? They would make a recommendation, and if there's a factual dispute, it would be referred to the ALJ. But nobody got to that point in this case. What the regulation set up is a procedural requirement for what they want the application to look like. It does not set up a substantive requirement that there must be a signature of the claimant. And even if it does, there's nothing in the regulation to preclude the representative of the claimant stepping in and finalizing the application process when you already have the agreement. Thank you. The case of O'Neill v. Bungie is submitted. Next for argument is United States v. Gonzalez. Thank you.
judges: Goodwin, McKeown, Fisher